# In the United States Court of Federal Claims

No. 12-431L

(Filed: July 28, 2015)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | * | |
| GRACE M. GOODEAGLE, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | Indian Claims; Breach of Fiduciary |
| | * | Duty; Individual Indian Money |
| v. | * | Accounts; Lost Profits; Statutory |
| | * | Interpretation; Partial Summary |
| THE UNITED STATES, | * | Judgment. |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Nancie G. Marzulla*, with whom was *Roger J. Marzulla*, Marzulla Law LLC, Washington, D.C., *Stephen R. Ward* and *John L. Williams*, Conner & Winters, LLP, Tulsa, Oklahoma, Of Counsel, for Plaintiffs.

*Stephen R. Terrell*, with whom were *John C. Cruden*, Assistant Attorney General, and *Peter K. Dykema*, Environmental and Natural Resources Division, U.S. Department of Justice, Washington, D.C., *Kenneth Dalton, Shani N. Walker,* and *Karen F. Boyd,* U.S. Department of Interior, *Thomas Kearns* and *Rebecca Saltiel*, U.S. Department of Treasury, Of Counsel, for Defendant.

## OPINION AND ORDER ON CROSS-
## MOTIONS FOR PARTIAL SUMMARY JUDGMENT

WHEELER, Judge.

This case arises from an alleged breach of fiduciary duty by the Government in failing to prudently invest funds held in trust on behalf of individual members of the Quapaw Indian Tribe of Oklahoma. Plaintiffs, Grace M. Goodeagle *et al.*, are holders of Individual Indian Money ("IIM") accounts managed by the Bureau of Indian Affairs ("BIA"). They are claiming damages for account investment mismanagement of their IIM funds. Included in Plaintiffs' claims are amounts for lost profits for the period pre-dating the American Indian Trust Management Reform Act of 1994 ("the 1994 Reform Act"),

Pub. L. No. 103-412, 108 Stat. 4239 (1994), during which Plaintiffs contend the Government failed to fulfill its statutory obligation to prudently invest IIM funds outside the Treasury to maximize income on those funds.

On April 13, 2015, Defendant filed a motion for partial summary judgment regarding the pre-1994 IIM account mismanagement claims, arguing that the Government was not required by statute or regulation to invest IIM funds outside the Treasury, or pay interest on IIM accounts, prior to the enactment of the 1994 Reform Act.  Defendant asserts that the Government should not be liable to Plaintiffs for investment mismanagement claims predating the Act because controlling law did not provide for the payment of interest on IIM accounts, an argument the Government says was affirmed by the U.S. Court of Claims in United States v. Gila River Prima-Maricopa Indian Cmty., 586 F.2d 209, 218 Ct. Cl. 74 (1978).

On May 14, 2015, Plaintiffs filed an opposition to the Government's motion and cross-moved for summary judgment.  Plaintiffs contend that the 1994 Reform Act merely reaffirmed the BIA's existing fiduciary duty, and that the United States has had a statutory obligation to maximize trust income on IIM accounts by prudent investment since 1918 under what became 25 U.S.C. §162a.  Further, Plaintiffs argue that the 1918 Act effectively acts as a waiver of sovereign immunity because it creates a substantive right enforceable against the Government for money damages.  Plaintiffs therefore assert that, consistent with the statutory mandate, the United States was responsible for investing Indian trust funds in the highest yielding investment vehicles available, and failure to do so constituted a breach of fiduciary duty before and after October 25, 1994, the effective date of the 1994 Reform Act.  The cross-motions are fully briefed, and ready for decision.  Oral argument is unnecessary.

The issue before the Court is one of statutory interpretation, and is therefore susceptible to resolution through summary judgment.  For the reasons explained below, the Court finds that the Government had an existing fiduciary duty to prudently invest IIM funds held in trust before the 1994 Reform Act, which reaffirmed and codified existing federal trust responsibilities, and that Plaintiffs have met their burden of proof establishing the Government's liability for failure to prudently invest IIM funds before October 25, 1994.  Accordingly, Defendant's motion for partial summary judgment is DENIED and Plaintiffs' cross-motion for partial summary judgment is GRANTED.

## Factual Background[1]

IIM accounts are interest-bearing accounts for trust funds belonging to an individual who has an interest in trust assets held by the Secretary of the Interior. 25 C.F.R. § 115.002. Allotments of Indian lands have been held in trust by the United States for nearly a century, and any revenues from the allotments have also been held in trust in IIM accounts, which later became an established feature of Indian law with the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461-479. In 1918, Congress stipulated that the Secretary was authorized to invest these funds (both IIM and tribal funds) in interest-bearing bank accounts and Treasury bonds. In 1938, Congress codified this practice in 25 U.S.C. § 162a, which established additional types of accounts into which IIM and tribal funds could be invested.

The 1938 statute, which governs the issue before the Court today, currently states that "[t]he Secretary of the Interior is hereby authorized in his discretion . . . to withdraw from the United States Treasury and to deposit in banks to be selected by him the common or community funds of any Indian tribe," and continues to provide that the Secretary is also authorized to withdraw funds held in trust by the United States "for the benefit of individual Indians." 25 U.S.C. § 162a. The Government's investment choices for both tribal and individual funds determine the rate of return on the accounts, and thus the Government, having chosen to make these investments, owes a fiduciary duty to individuals and tribes alike to invest their funds prudently in order to maximize return on the accounts. See Jicarilla Apache Nation v. United States, 112 Fed. Cl. 274, 289 (2013).

With the enactment of § 162a, the BIA initiated a policy where IIM funds would be invested and managed by BIA agency officers, remaining consistent with the Secretary's existing responsibilities for tribal trust funds. H.R. Report No. 1030778, at 11-12 (1994). In 1966, the Department of the Interior began to invest IIM funds centrally from the BIA's Division of Finance in New Mexico, and the funds were invested in group securities. The BIA computed and distributed IIM interest semi-annually until 1989, at which point the BIA converted to a monthly distribution of interest based on the average daily value of each account. Then with the Reform Act of 1994, Congress codified and reaffirmed the Government's existing fiduciary duties concerning IIM trust funds.

## Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any issue of material fact, and the movant is entitled to judgment as a matter of law. RCFC 56(a); Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986). A "genuine" dispute is one

---

[1] The facts are taken from the parties' briefs and supporting exhibits, and are deemed not to be in dispute.

that "may reasonably be resolved in favor of either party," Anderson, 477 U.S. at 250, and a fact is "material" if it might significantly alter the outcome of the case under the governing law. Id. at 248. In determining the propriety of summary judgment, a court will not make credibility determinations, and will draw all inferences in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

Discussion

As noted, the issue before the Court is one of statutory interpretation, namely, whether the enactment of 25 U.S.C. § 162a created a statutory mandate for the Government to prudently invest IIM funds, and whether the 1994 Reform Act merely reaffirmed this existing duty or whether it gave rise to a new duty to prudently invest IIM funds which had not existed previously. Plaintiffs maintain that the Government's fiduciary duty to maximize return on IIM accounts dates back as far as 1918, whereas the Government argues that the 1994 Act created a new statutory duty authorizing the Secretary to invest IIM funds outside the Treasury for the first time.

A. The Reform Act of 1994

Plaintiffs contend that the enactment of the 1994 Reform Act reaffirmed the Government's existing fiduciary duties to IIM trust beneficiaries, rather than creating a new fiduciary duty to prudently invest IIM funds. In support of this contention, Plaintiffs point to Cobell v. Norton, in which the U.S. District Court for the District of Columbia stated that "[t]he trust nature of the federal government's IIM responsibilities was recognized long before passage of the 1994 Act," and that the Reform Act was intended to codify the Secretary's prior practice of exercising complete control over the IIM funds. Cobell v. Norton, 283 F. Supp. 2d 66, 145 (D.D.C. 2003), vacated in part on other grounds, 392 F.3d 461 (D.C. Cir. 2004). Plaintiffs further point out that these trust duties are money-mandating and create a Tucker Act claim. Id. 392 F.3d at 470-71; see also White Mountain Apache Tribe of Ariz. v. United States, 20 Cl. Ct. 371 (1990).

Plaintiffs also support this contention by citing the House Report for H.R. 4833, later to become the 1994 Reform Act, which confirms congressional intent to reaffirm the Government's existing fiduciary duty. The Committee believed that this report would "further clarify the Secretary's trust responsibilities to require the Secretary to invest individual Indian trust funds," and would "broaden the types of investments in which the Secretary could invest individual Indian trust funds." H.R. Report No. 103-778, at 11-12 (1994).

The Government argues that the United States owed no trust duty to pay interest on IIM accounts prior to the 1994 Reform Act because, before the Act, there was no specific

statute or regulation mandating that the Government must prudently invest IIM funds.  The Government contends that the relationship with the individual Indian account holders may have been styled as trusts, but that the Government did not assume "all the fiduciary duties of a private trustee," and thus created a far more limited relationship than those trust relationships between private parties at common law, citing United States v. Jicarilla Apache Nation, 131 S. Ct. 2313, 2323 (2011).

The legislative history of the 1994 Reform Act indicates that Congress intended the Act to merely reaffirm and codify the existing fiduciary duties of the Government to invest IIM funds outside the Treasury in order to maximize the return on those funds.  Failure to prudently invest both tribal and individual Indian funds results in a breach of fiduciary duty, and creates a cause of action in this Court.  Plaintiffs are correct in their assertion that this fiduciary duty existed long before the enactment of the 1994 Reform Act, and accordingly Plaintiffs may seek lost profits for pre-1994 investment mismanagement claims.

B.  The Government's Liability for Imprudent Investment

The parties agree generally that Plaintiffs are not entitled to recover pre-1994 interest on IIM accounts.  However, Plaintiffs stress that they are nevertheless entitled to recover lost profits due to the Government's failure to prudently invest all Indian funds, which are the damages Plaintiffs seek in this case. Therefore, the Government's reliance on cases such as United States v. Gila River Pima-Maricopa Indian Community, White Mountain Apache Tribe of Arizona and American Indians Residing on Maricopa-Ak Chin Reservation v. United States, which dealt exclusively with the issue of unpaid interest on IIM accounts, is misplaced.  See United States v. Gila River Pima-Maricopa Indian Cmty., 586 F.2d 209, 218 Ct. Cl. 74 (1978); White Mountain Apache Tribe, 20 Cl. Ct. at 384; Am. Indians Residing On Maricopa-Ak Chin Reservation v. United States, 667 F.2d 980, 1002-03, 229 Ct. Cl. 167, 203 (1981).

Plaintiffs argue that the 1918 statute, later codified as 25 U.S.C. §162a, establishes the Government's liability for failure to prudently invest IIM funds.  This Court has held that the statute waives sovereign immunity and subjects the Government to damages for imprudent investment.  See White Mountain Apache Tribe, 20 Cl. Ct. 371; Jicarilla Apache Nation, 112 Fed. Cl. 274; Osage Tribe of Indians of Oklahoma v. United States, 72 Fed. Cl. 629 (2006).  Although these cases involved tribal trust funds, the same fiduciary duty applies equally to individual Indian funds as they are both governed by 25 U.S.C. § 162a. Further, Plaintiffs cite to the Supreme Court's decision in United States v. Mitchell, which held that the Government's liability was established even absent an express mandating statute or other fundamental document.  463 U.S. 206, 225 (1983).

The Government argues that its liability for imprudent investment of IIM funds was not established until 1994 because the statutory language in § 162a makes the Secretary's power to invest IIM funds discretionary.  See 25 U.S.C. § 162a ("The Secretary of the Interior is hereby authorized *in his discretion*, and under such rules and regulations as he *may* prescribe. . . .") (emphasis added).  As noted above, the Government's reliance on such an interpretation is misguided because the Supreme Court has found there to be an existing statutory mandate to prudently invest Indian funds in the highest yielding investment accounts to maximize return, even absent explicit statutory language.  Mitchell, 463 U.S. at 225.  This interpretation stems from a common law understanding that a fiduciary duty exists with respect to such monies or properties unless Congress has provided otherwise.  White Mountain Apache Tribe of Ariz., 20 Ct. Cl. at 383 (citing Mitchell, 463 U.S. at 225).

## C.  Duty to Invest Prudently Since 1966

The Government began investing Plaintiffs' IIM funds in 1966.  Along with the choice to invest came the duty to invest prudently in order to maximize return on the accounts.  Plaintiffs draw an analogy between their claims in this case to those brought by the Cheyenne-Arapaho Tribe, both of which were based on the Secretary's authority to invest nonproductive funds, and a duty to do so, in order to make the funds "as productive as legally and practically possible."  Cheyenne-Arapaho Tribes of Indians of Okla v. United States, 206 Ct. Cl. 340, 347-48 (1975).  This Court's predecessor has held that IIM funds are trust funds, and "[w]here the Government takes on or has control or supervision over tribal money or property, the normal relationship is fiduciary," absent any congressional statement to the contrary.  Am. Indians Residing on Maricopa-Ak Chin Reservation, 667 F.2d at 1002, 229 Ct. Cl. at 203.  Thus, because the United States holds Plaintiffs' IIM funds in trust, there is a fiduciary duty on the part of the Government to prudently invest them in order to maximize the return.

While the Department of the Interior had the statutory authority to invest IIM funds as early as 1908, the parties agree that the Secretary began investing these funds centrally from the BIA's Division of Finance in Albuquerque, New Mexico in 1966.  Once the Government took Plaintiffs' IIM funds into trust and began investing them in group securities, the Government had an obligation to Plaintiffs to make them as productive as possible through prudent investment, maximizing return on the funds. Failure to do so constitutes a breach of fiduciary duty and gives rise to Plaintiffs' claim for lost profits for the time period in which the Government did not prudently invest the IIM funds.

<u>Conclusion</u>

Upon consideration of the motions before the court, Defendant's motion for partial summary judgment is DENIED and Plaintiffs' cross-motion for partial summary judgment is GRANTED.    As explained, the outcome of the pre-1994 IIM investment mismanagement claims turns on the legal issue of whether the Government had a statutory obligation to prudently invest IIM funds prior to the enactment of the 1994 Reform Act. The Court finds that the Act reaffirmed and codified the Government's existing fiduciary duty to invest IIM funds in order to maximize the return on those funds.   Accordingly, Plaintiffs are entitled to recover lost profits resulting from the Government's failure to prudently invest IIM funds prior to October 25, 1994.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

7