**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GRACE M. GOODEAGLE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 12-431L |
| | ) | |
| v. | ) | Hon. Thomas C. Wheeler |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |
| | ) | |
| QUAPAW TRIBE OF OKLAHOMA, | ) | |
| | ) | No. 12-592L |
| Plaintiff, | ) | |
| | ) | Hon. Thomas C. Wheeler |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |
| | ) | |
| THOMAS CHARLES BEAR, *et al.*, | ) | |
| | ) | No. 13-51X |
| Claimants, | ) | |
| | ) | Hon. Thomas C. Wheeler |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF MORRIS SHEPPARD ARNOLD**

## I.     INTRODUCTION

The United States moves to exclude the expert testimony of Morris Sheppard Arnold for

failure to provide expert testimony that is relevant.  Specifically, Judge Arnold's opinions

regarding the history, culture, and sovereignty of the Quapaw Tribe prior to their departure from Arkansas have no legal relevance to any of the claims in this litigation.  Plaintiffs' claims focus on activities on their reservation in Oklahoma that have taken place since the Tribe decided to fully allot its reservation to individual owners.  Judge Arnold's opinions regarding the Quapaw Tribe's conduct in the centuries before the establishment of the Quapaw reservation do not help to prove or disprove any facts relevant to the claims in the above-captioned cases.  The Court should, therefore, exclude his testimony under Rule 702 of the Federal Rules of Evidence.

## II.      FACTUAL BACKGROUND

Pursuant to the Court's amended scheduling order (Am. Disc. Scheduling Order, ECF No. 114) [1], the United States and Plaintiffs exchanged expert reports and expert rebuttal reports on April 13, 2016, and June 16, 2016, respectively.  Judge Arnold's expert report, "The Early History of Quapaw Tribal Sovereignty," provides his "expert opinions concerning the history, culture, and sovereignty of the Quapaw Tribe, primarily prior to the removal of the Tribe from Arkansas to a reservation in present-day Oklahoma."  Arnold Rep. at 1, Ex. 1.  Judge Arnold did not prepare or submit an expert rebuttal report.  The United States deposed Judge Arnold on July 26, 2016, in Little Rock, Arkansas.  Plaintiffs have listed Judge Arnold as an expert witness who will testify at trial (Pls./Claimants' Trial Witness List, ECF No. 167 at 2).

Judge Arnold sits on the Eighth Circuit Court of Appeals, but for purposes of this litigation, Judge Arnold is strictly testifying as a historian.  Arnold Dep. 12:4-6, Ex. 2.  Judge Arnold has extensively studied and researched the history of colonial Arkansas.  Arnold Biography at 2, Ex. 1.  Indeed, most of his work involves the study of 18th century European

---

[1] For consistency, references to "ECF No." refer to the docket in *Goodeagle v. United States*, Case No. 12-431, although the documents are also filed in *Quapaw v. United States*, Case No. 12-592L and *Bear v. United States*, Case No. 13-51X.

relations in Arkansas, as well as early European encounters with indigenous groups, namely the Quapaw Tribe.  Arnold Dep. 37:14-19, Ex. 2.

## III.    STANDARD OF REVIEW

Rule 702 of the Federal Rules of Evidence sets forth the standard for admissibility of expert opinion testimony.  Hence, a witness who is qualified by "knowledge, skill, experience, training, or education" may testify in the form of an opinion if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The trial court acts as the "gatekeeper" in admitting or excluding proposed expert testimony.  *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1301-02 (Fed. Cir. 2002) (citing *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 597 (1993).  The proponent of the expert testimony bears the burden of demonstrating the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316, 1318-19 (9th Cir. 1995); *Extreme Networks, Inc. v. Enterasys Networks, Inc.*, 395 Fed. Appx. 709, 714 (Fed. Cir. 2010)(citing Fed. R. Evid. 702).

The trial court's central objective is to ensure that the expert employs the same level of intellectual rigor in the courtroom that characterizes the practice of an expert in the relevant field. *Daubert*, 509 U.S. at 593-94; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999). In performing its gatekeeping function, the trial court performs a two-step inquiry into the proposed expert testimony. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1220 (Fed. Cir. 2006).  First, the court must examine whether the proffered expert testimony has "a reliable basis in the knowledge and experience of his or her discipline." *Daubert*, 509 U.S. at 592-93.

(quotations and citations omitted).  This "preliminary inquiry" requires the court to examine both the expert's qualifications and "whether the reasoning or methodology underlying the testimony is scientifically valid and applicable to the particular set of facts." *Ponca Tribes of Indians of Okla. v. Cont'l Carbon Co.*, No. CIV-05-445, 2009 WL 5842042, at *1 (Jan. 23, 2009 W.D. Okla.) (citing *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1120 (10th Cir. 2003), and *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2004)).  Second, the court must examine whether "the proposed testimony is sufficiently relevant, meaning that there is a logical relationship between the evidence proffered and the material issue that evidence is supposed to support." *Id.* (citing *Bitler*, 391 F.3d at 1121); *see also Liquid Dynamics*, 449 F.3d at 1220 ("This requires an assessment of the reasoning and methodology underlying the testimony to determine whether it is scientifically valid.") (citing *Daubert*, 509 U.S. at 592).  The "*Daubert* standards of relevance and reliability" must be met in a bench trial as well as a jury trial.  *Seaboard Lumber Co.,* 308 F.3d at 1302.

## IV.   ARGUMENT

### A.   Judge Arnold's Opinions Are Not Relevant and Will Not Assist the Trier of Fact.

To be admissible, expert testimony must be relevant.  *Daubert*, 509 U.S. at 589. Evidence is relevant if: (1) "it has any tendency to make a fact more or less probable than it would be without the evidence," and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401.  Expert testimony may not be admitted unless "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," and the expert is qualified to "testif[y] thereto."  Fed. R. Evid. 702.  Because helpfulness to the trier of fact is the "central concern" of the rules governing expert testimony, *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (quoting 3 Weinstein's Evidence, ¶ 702[01]

- 4 -

(1985)), a court may exclude testimony when its admission would be a "waste of time." Fed. R. Evid. 403.  Thus, despite Judge Arnold's impressive scholarly background on colonial Arkansas, his opinions are simply not relevant for purposes of this litigation.

Plaintiffs bring a litany of claims involving the mining and leasing of natural resources, allotted lands, and tribal lands, as well as claims for mismanagement of tribal and individual Indian accounts.  Yet, Judge Arnold does not render any opinions that would prove or disprove any facts important to these claims.  In fact, Judge Arnold based his report on the history, culture, and sovereignty of the Quapaw Tribe in the 18th century (Arnold Dep. 46:15-20, Ex. 2), which was "primarily prior to the removal of the Tribe from Arkansas to a reservation in present-day Oklahoma."  Arnold Rep. at 1, Ex. 1.  All but one page of Judge Arnold's entire report focuses on the relationship forged between the Quapaw Tribe and certain European powers. *Id*. at 1-13.  His report narrates the early contact between the French and the Quapaws in 1673, including the establishment and activities of early French settlements. *Id*. at 1-5.  Judge Arnold also narrates the subsequent relations between the Spanish and the Quapaws, as well as the English and the Quapaws. *Id*. at 5-12.  None of these European powers, however, are relevant to this litigation.  Indeed, any relation or agreement established between the Quapaws and these foreign governments is not only irrelevant to the United States, but also outside this Court's jurisdiction.  28 U.S.C. § 1491(a)(1).

Judge Arnold's report also does not mention anything about natural resources, allotted lands, or Indian trust accounts.  Judge Arnold further testified that he is not opining on lead and zinc mining, the allotment process, whether any fiduciary duty exists between the United States and the Quapaw Tribe, or whether the United States breached any fiduciary duties as it relates to tribal money, royalties, or any other resources.  Arnold Dep. 47:2-12, Ex. 2.  He also testified

that he is not attempting to quantify any damages, *id*. at 46:21-23, including the loss of tribal sovereignty, *id*. at 47:13-15.  Judge Arnold is further unaware of any methodology to quantify the existence of tribal sovereignty or the loss of it.  *Id*. at 47:13-15; 48:16-21.

It is puzzling why Plaintiffs have asked Judge Arnold to prepare a report that is not relevant to the claims, timeframe, or parties involved.  Arnold Dep. 46:16-20, Ex. 2.  Neither party is disputing that the Quapaws did not originally inhabit what is now the state of Arkansas, nor is either party suggesting that the Quapaws did not freely interact with European powers before the United States' formation.  Plaintiffs also do not bring any claims for money damages predating the allotment period.  Moreover, to the extent that Plaintiffs are hoping to illustrate that the Tribe possessed and enjoyed a certain degree of sovereignty before the United States' formation, Judge Arnold's opinions are still immaterial.  Indeed, Supreme Court precedent has already established the parameters of tribal sovereignty.  *United States v. Wheeler*, 435 U.S. 313, 323 (1978) (The sovereignty that American Indian tribes "retain is of a unique and limited character.  It exists only at the sufferance of Congress and is subject to complete defeasance.").

Because Judge Arnold's report predates any of Plaintiffs' claims and focuses primarily on the Tribe's relation with foreign powers, his testimony is entirely unhelpful to the trier of fact in determining whether Plaintiffs are entitled to damages.  Judge Arnold's opinions should, therefore, be excluded as irrelevant because his opinions cannot "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R Evid. 702.

### B.    Judge Arnold's Opinions Will Not Assist this Court in Determining Monetary Relief.

The United States Court of Federal Claims has the authority to render monetary judgments.  28 U.S.C. § 1491.  Except under limited circumstances, this Court has "no equity jurisdiction . . ." *Fort Mojave Tribe of Indians v. United*, 546 F.2d 429 (Ct. Cl. 1976).

Accordingly, expert opinions that are not "of consequence in determining" Plaintiffs' monetary claims, are not relevant. Fed. R. Evid. 401.

As noted above, Judge Arnold has already testified that he is not opining on the treatment of any natural resources, lands, or monetary accounts. Arnold Dep. 47:2-12, Ex. 2. And he is not attempting to quantify any damages that may have resulted from the United States' involvement in such treatment. Arnold Dep. 46:21-23, Ex. 2. His report further affirms that his opinion is solely based on the history, culture, and sovereignty of the Tribe, but mostly as it relates to a period before the United States' existence. Arnold Rep. at 1, Ex. 1. Because Judge Arnold's opinions do not render an opinion for money damages or provide evidence that would assist the Court in determining whether money damages should be awarded, Judge Arnold's opinions should be excluded.

Even under the Court's charge to determine whether Plaintiffs/Claimants are owed money damages for the congressional reference claims in the *Bear* litigation, Judge Arnold's opinions are not relevant to the claims raised in *Bear* for the reasons discussed above. Namely, Judge Arnold's opinions predate, in some cases by centuries, the facts and claims that are at issue. In any event, because Judge Arnold's opinions do not assist the Court in determining any facts in issue in any of these cases, he should not be permitted to testify. Even if the Court is inclined to allow Judge Arnold's testimony for purposes of the *Bear* litigation, the Court should still exclude Judge Arnold's testimony from any consideration in both *Goodeagle* and *Quapaw Tribe*.

## V.   CONCLUSION

In closing, Judge Arnold's April 13, 2016 expert report is not relevant to the underlying issues or facts of this litigation, and is, therefore, wholly unhelpful to the Court. Moreover,

Judge Arnold's opinions are not within this Court's subject matter jurisdiction.  For these

reasons, Defendant respectfully requests that this Court exclude Judge Arnold's expert opinion

testimony in its entirety.

    Respectfully submitted, September 16, 2016,


JOHN C. CRUDEN
Assistant Attorney General
 *s/ Brian M. Collins*
BRIAN M. COLLINS
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Tel:     (202) 305-0428
Fax:     (202) 305-0506
Brian.m.collins@usdoj.gov

Attorney for the United States

OF COUNSEL:

FRANK SINGER
KRYSTALYN KINSEL
GUILLERMO MONTERO
REBECCA JAFFE
United States Department of Justice
Environment and Natural Resources Division

KENNETH DALTON
SHANI N. WALKER
KAREN F. BOYD
United States Department of the Interior
Office of the Solicitor

THOMAS KEARNS
REBECCA SALTIEL
United States Department of the Treasury
Bureau of the Fiscal Service
Office of the Chief Counsel